IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOYCE ALANE GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:14-cv-114-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Joyce Alane Gray ("Plaintiff" or "Gray") applied for Disability Insurance Benefits

and Supplemental Security Income under Title II of the Social Security Act ("the Act"),

42 U.S.C. §§ 401 *et seq*., May 2, 2011.  (Tr. 64-65).  After being denied, Gray timely

filed for and received a hearing before an administrative law judge ("ALJ") who rendered

an unfavorable decision on July 27, 2012.  (Tr. 23-33). Gray timely sought judicial

review; thus, review proceeds pursuant to 42 U.S.C. § 405(g), 1383(c)(3) and 28 U.S.C. §

636(c).  After careful scrutiny of the record and briefs, for reasons herein explained, the

Court AFFIRMS the Commissioner's decision.

**I. NATURE OF THE CASE**

Gray seeks judicial review of the Commissioner's decision denying her

application for disability insurance benefits.  United States District Courts may conduct

limited review of such decisions to determine whether they comply with applicable law

and are supported by substantial evidence.   42 U.S.C. § 405.   The Court may affirm,

reverse and remand with instructions, or reverse and render a judgment.  *Id*.

## II.  STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.   The Court's

sole function is to determine whether the ALJ's opinion is supported by substantial

evidence and whether the proper legal standards were applied.   *See Jones v. Apfel*, 190

F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

Cir. 1983).

 "The Social Security Act mandates that 'findings of the Secretary as to any fact, if

supported by substantial evidence, shall be conclusive.'"  *Foote v. Chater*, 67 F.3d 1553,

1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).   Thus, this Court must find the

Commissioner's decision conclusive if it is supported by substantial evidence.  *Graham v.

Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla

— *i.e.*, the evidence must do more than merely create a suspicion  of the existence of a

fact, and must include such relevant evidence as a reasonable person would accept as

adequate to support the conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.

1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d

842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th

Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the court would have reached a contrary result as finder of fact,

and even if the evidence preponderates against the Commissioner's findings.  *Ellison v.*

*Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584

n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.

1986)).   The Court must view the evidence as a whole, taking into account evidence

favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560 (citing *Chester v.*

*Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).   The Court "may not decide facts anew,

reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but

rather it "must defer to the Commissioner's decision if it is supported by substantial

evidence."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*,

703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the

decision applies incorrect law, or if the decision fails to provide the district court with

sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton*

*v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing

*Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).   There is no presumption

that the Commissioner's conclusions of law are valid.  *Id*.; *Brown v. Sullivan*, 921 F.2d

1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB")

provides income to individuals who are forced into involuntary, premature retirement,

provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. §

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes.
*See* Social Security Administration, Social Security Handbook, § 136.1, *available at*
http://www.ssa.gov/OP_Home/handbook/handbook.html

423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate

and distinct program.  SSI is a general public assistance measure providing an additional

resource to the aged, blind, and disabled to assure that their income does not fall below

the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See*

42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate

programs, the law and regulations governing a claim for DIB and a claim for SSI are

identical; therefore, claims for DIB and SSI are treated identically for the purpose of

determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.

1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the

meaning of the Social Security Act which defines disability in virtually identical language

for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§

404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is

unable to

> Engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous
> period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one

resulting from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42

U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

---

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general
tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100,
*available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was 51 years old at the time of the ALJ's decision and had the equivalent of high school education. (Tr. 45). Plaintiff previously worked as a dispatcher, route manager, and warehouse packer. (Tr. 60-61, 164). Plaintiff alleged she could no longer work due to hepatitis C, cirrhosis of the liver, and pancreatitis that caused abdominal pain and nausea. (Tr. 163, 198).

In evaluating Plaintiff's applications, the ALJ applied the five-step, sequential evaluation process for when determining whether a claimant is disabled. (Tr. 26-28). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

alleged onset of her disability on April 27, 2011 (Tr. 28).  The ALJ found at step two that hepatitis C and cirrhosis were severe impairments.  (Tr. 28).  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  (Tr. 28).

Next, the ALJ found Plaintiff retained the residual functional capacity (RFC) to perform a full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a) (Tr. 29).  Based on vocational expert (VE) testimony, the ALJ found Plaintiff could perform her past relevant work as a poultry food dispatcher, which the VE testified was performed at the sedentary exertional level.  (Tr. 32. 60-61).  Accordingly, the ALJ found Plaintiff was not disabled as defined in the Social Security Act.  (Tr. 33).

## V.  FACTS

Gray sought treatment on several occasions for abdominal pain and nausea.  On February 9, 2009 Gray presented to the Enterprise Medical Clinic and saw her treating physician, Dr. C. Alan Young, for treatment of bronchitis.  At that time she also complained of pain in the upper gastric area, but no treatment was indicated.  (Tr. 275).

The record reflects no other complaints of or treatment for gastritis until November 16, 2010, when Plaintiff was seen at the Emergency Room at Enterprise Medical Center complaining of nausea and gastric pain.  (Tr. 228).  Later Dr. Young referred plaintiff for an esophagastroduodenoscopy.  On January 6, 2011, the reporting physician noted that the procedure showed "horrible total gastritis, multiple small ulcers."  (Tr. 259).  On January 18, 2011, Gray presented to Digestive Health Specialists of the Southeast for a gastroenterology consultation for complaints of epigastric abdominal pain and back pain.

(Tr. 217).  She further stated she had episodic nausea and loose bowels.  (Tr. 217).  The

lab work conducted on January 6, 2011 revealed elevated ammonia levels and imaging

appeared to reveal splenomegaly and cirrhosis of the liver.  (Tr. 217, 219).  At her follow

up on February 18, 2011, Gray reported that the pain in her abdomen was "a lot better"

and she reported "having some altered bowel habits but no blood in her stool".  (Tr. 214).

On March 2, 2011, Plaintiff returned to Digestive Health Specialists to discuss her

diagnosis of hepatitis C and indications of cirrhosis.  (Tr.  211-213).

Her elevated ammonia levels were also noted by Dr. Young in his May 17, 2011

examination.  Dr. Young concluded these elevated levels were related to her short term

memory loss.  (Tr. 298).  Dr. Young stated by letter dated June 10, 2011 as follows:

> Joyce Gray . . . has been a patient of mine for quite sometime.  She has
> cirrhosis of the liver due to Hepatitis C.  She requires medications to keep
> her ammonia levels in check.  Without the medication she suffers from
> bowel incontinence.  I feel that she cannot hold down a job because of her
> current health condition.

(Tr. 304).  Thereafter, Gray presented on July 4, 2011 to Enterprise Medical Center with

complaints of abdominal pain and nausea.  (Tr. 310-312).  Again Gray presented to

Enterprise Medical Center on July 21, 2011 with complaints of pain in "multiple sites"

which had improved but GI symptoms remained.  Specifically, she reported that she had

"moderate" constipation and cramping and "small" episodes of diarrhea.  (Tr. 324).  She

also reported that the GI pain was a 7 on a one-to-ten scale.  (Tr. 321).  The Clinical

Impression noted "Chronic Hepatitis C" and "cirrhosis of liver".  (Tr. 325).

## VI. ISSUES

Gray raises three issues for judicial review. The issues and arguments Gray raises turn upon this Court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen,* 815 F.2d 622, 624-25 (11th Cir.1987). These issues are set out by Gray as follows:

(1) Whether the ALJ erred in making his Residual Functional Capacity ("RFC") assessment because the record does not include any RFC assessments provided by a physician. (*See* Doc. 12 at 3).

(2) Whether the ALJ erred in failing to properly consider the opinions of Plaintiff's treating physician, Dr. G. Alan Young and to state with particularity his reasons for failing to assign it controlling weight. (*See* Doc. 12 at 3).

(3) Whether the ALJ erred in failing to issue a proper credibility finding. (See Doc. 12 at 3).

## VI. DISCUSSION

### I. The ALJ did not err in finding Daniels' RFC without an RFC assessment from a physician.

Plaintiff argues that the ALJ erred in finding Gray's RFC without an RFC assessment from a physician in the record. Contrary to Plaintiff's argument, there is no rule of law which requires that an ALJ's RFC determination be supported by an assessment from a physician. A residual functional capacity assessment is used to determine the claimants' capacity to do as much as they are possibly able to do despite

their limitations.  *See* 20 C.F.R. § 404.1545(a)(1) (2010).  An RFC assessment will be

made based on all relevant evidence in the case record.  *Id.*; *Lewis v. Callahan*, 125 F.3d

at1440.  The Commissioner's decision is due to be affirmed "if it is supported by

substantial evidence and the correct legal standards were applied."  *Kelley v. Apfel,* 185 F.

3d 1211, 1213 (11th Cir. 1999).  "Substantial evidence is less than a preponderance, but

rather such relevant evidence as a reasonable person would accept as adequate to support

a conclusion."  *Moore v. Barnhart,* 405 F. 3d 1208, 1211 (11th Cir. 2005).

Gray argues that the ALJ erred by not making a residual functional capacity

determination which was supported by a treating or examining physician's opinion.

Although Gray does not cite *Coleman v. Barnhart,* 264 F. Supp.2d 1007, 1010 (S.D. Ala.

2003), the court is aware of this opinion and that it supports her argument.  However, this

court has previously addressed the question of whether it is reversible error for an ALJ to

make an RFC assessment which is not supported by an assessment from a physician.  *See*

*Daniels v. Astrue*, 2012 WL 353756 (M.D. Ala. 2012).

In *Daniels,* this court distinguished *Coleman* on the basis of its facts and because

the *Coleman* court gave no citation to any source of law requiring a physician's

assessment for the purposes of making an RFC determination.  *Id.*  *4.  Also, this court

explained that it was persuaded by the reasoning of Judge Foy Guin in *Langley v. Astrue,*

where the court held that reversal is not required because there is no RFC from a

physician in the record.  777 F .Supp.2d 1250, 1257-60 (N.D. Ala. 2011).  Indeed,

*Langley* disagreed with the *Coleman* reasoning finding that it "attempt[s] to place the

burden of proving the claimant's RFC on the Commissioner at step five" and this shifting

of the burden is "inconsistent with the Commissioner's regulations, Supreme Court precedent and unpublished decisions in this Circuit." *Daniels, supra*, at * 5 citing *Id.* at 1260. (Citations omitted). Accordingly, the Court concludes that the ALJ did not err in finding Plaintiff's RFC without the benefit of a physician's assessment in the record.

By implication, Gray can also be heard to argue that the ALJ erred by not ordering an additional consultative examination for the purpose of establishing an RFC. At an ALJ hearing, "the [ALJ] is responsible for assessing [the claimant's] residual functional capacity." 20 C.F.R. § 404.1546(c) (2010). The claimant is "responsible for providing the evidence [the ALJ] will use to make a finding about [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(3) (2010). The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [their] own medical sources. *Id.; Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988). (The ALJ is not required to order a consultative examination unless the record establishes it is necessary to render a fair decision). The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision. *Reeves v. Heckler,* 734 F.2d 519, 522 n. 1 (11th Cir. 1984). However, where no physician recommends an additional consultation and the record is sufficiently developed for the ALJ to make a determination, the failure to order an additional consultative examination is not error. *Good v. Astrue,* 240 Fed. Appx. 399,*3 (11th Cir. 2007) citing *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999).

The court finds there is no evidence in the record that any physician recommended

Gray undergo an additional consultative exam.  The court also finds that the ALJ

carefully considered the entire record, including all the medical evidence, which he

summarized in detail, (Tr. 28-32 ), in finding Gray had the RFC to perform her past

relevant work as a poultry food dispatcher.  (Tr. 32).  Moreover, the ALJ specifically

stated that he gave "little weight" to the state agency medical consultant's physical

assessment on the basis that other medical opinions were "more consistent with the record

as a whole" and that the state agency consultant failed to "adequately consider the

claimant's subjective complaints."  (Tr. 31, 66-73).  Accordingly, the court concludes that

based upon a review of the record as a whole, the ALJ's RFC finding is supported by

substantial evidence.  *Moore,* 405 F.3d at 1211.

### II.  The ALJ did not err in discounting Plaintiff's treating physician's opinion that Plaintiff was disabled.

Plaintiff argues that the ALJ erred in discounting Plaintiff's treating physician's

opinion that she was disabled.  Indeed, Dr. Young, Gray's treating physician, stated by

letter dated June 10, 2011 as follows:

> Joyce Gray . . . has been a patient of mine for quite sometime.  She has
> cirrhosis of the liver due to Hepatitis C.  She requires medications to keep
> her ammonia levels in check.  Without the medication she suffers from
> bowel incontinence.  I feel that she cannot hold down a job because of her
> current health condition.

(Tr. 304). The Eleventh Circuit has established that the opinion of a treating physician

"'must be given substantial or considerable weight unless 'good cause' is shown to the

contrary.'" "'[G]ood cause exists when the: (1) treating physician's opinion was not

bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating

physician's opinion was conclusory or inconsistent with the doctor's own medical

records. *Phillips v. Barnhart,* 357 F.3d at 1241(citing *Lewis,* 125 F.3d at 1440).  In

*Lewis*, the Eleventh Circuit also established that the ALJ must clearly articulate the

reasons for giving less weight to the opinion of a treating physician and that the failure to

do so constitutes reversible error.  125 F.3d at 1440.  Furthermore, a treating physician's

opinion will be given controlling weight if it is well supported by medically acceptable

clinical and diagnostic techniques and is consistent with other evidence in the record.

*Holley v. Chater*, 931 F. Supp. 840, 849 (S.D. Fla. 1996) (citing *Edwards v. Sullivan*, 937

F.2d 580, 583-84 (11th Cir. 1991)).

    However, the simple fact that a treating physician's opinion is included in the

evidence does not require the ALJ to follow it but rather the opinion may be given less

weight or dismissed entirely.  *Washington v. Barnhart*, 175 F. Supp. 2d 1340, 1346 (M.D.

Ala. 2001) (finding that the ALJ properly considered the treating physician's medical

opinions based on the objective medical evidence in the record as a whole it was "entirely

reasonable" when the treating physician's records and notes were inconsistent).  When an

ALJ chooses to reject the opinions of the claimant's treating physicians there needs to be

sufficient detail set forth by the ALJ for the court to conduct a meaningful review.

*Pettaway v. Astrue*, Case No. 06-00880-WS-B, 2008 WL 1836738, at *14 (S.D. Ala. Apr.

21, 2008) (finding that the ALJ erred in rejecting the opinions of a treating physician

because insufficient detail was set forth by the ALJ for the reviewing court to be able to

conduct any kind of meaningful analysis).

The ALJ identified "good cause" to discount the treating doctor's opinion. (Tr. 31). Indeed, the ALJ found that "the opinion is not supported by the objective medical evidence, specifically, medical evaluations and treatment notes, and is not given controlling weight". (Tr. 31). *Wilson v. Heckler,* 734 F.2d 513, 518 (11th Cir. 1984) (a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion; however, an ALJ may reject treating physician's opinion when it is contrary to the evidence.) *Moore v. Barnhart,* 405 F. 3d 1208, 1212 (11th Cir. 2005) (court found no reversible error where ALJ articulated specific reasons for discounting treating physician's opinion, including physician's failure to account for claimant's diverse daily activities or give any specific assessment of claimant's functional capacity, and physician's opinion in a short form was used to support claimant's food stamp eligibility).

After a careful and independent consideration of the Plaintiff's medical records, the Court finds that the ALJ correctly concluded that Dr. Young's opinion was "not given controlling weight" based upon a thorough review and summary of the medical records. (Tr. 31). Indeed, the ALJ noted that testing revealed Gray suffered from cirrhosis in November 2010. He further noted that her treating physician, Dr. Young, referred her for a gastroenterology consultation on January 18, 2011, where Gray complained of epigastric abdominal pain and back pain and episodic nausea and loose stools. However, during her follow-up on February 18, 2011, Gray reported that she was a lot better. During this time, she was treated with Prilosec, Aldactone and Generlac. In March, 2011, Plaintiff was seen for follow-up on her lab work, which confirmed a diagnosis of

Hepatitis C.  She reported 3-4 bowel movements a day and some improvement of symptoms with Prilosec.  In May, 2011, it was noted that her ammonia levels were elevated and her medication was increased.  Twice in July, 2014, Plaintiff was seen at the emergency room once for complaints of nausea without vomiting and again for pain in the abdomen which she rated as 7 out of 10.  (Tr. 30-31).  Thus, the Court concludes that the ALJ properly considered the objective medical evidence of record as a reason for discounting Dr. Young's opinion that Gray "cannot hold down a job because of her current health condition.  (Tr. 304).

Moreover, the ALJ correctly stated that conclusory opinions such as Dr. Young's about a claimant's ability to work (Tr. 304) are not entitled to significant weight, as this is a decision reserved solely for the Commissioner.  (Tr. 31); *See*  20 C.F.R. §§ 404.1527(d)(1)-(3) (treating source opinions on issues that are reserved to the Commissioner are not entitled to any special significance); *Caulder v. Bowen,* 791 F. 2d 872, 878 (11th Cir. 1986) (physician's statement that claimant is disabled is not dispositive of the issue of disability but must be considered in the Commissioner's examination of the totality of the evidence).  Thus, based on the above, the court finds "good cause" exists for the ALJ to reject Dr. Young's opinion.  Accordingly, based on the evidence as a whole the Court concludes that the ALJ's determination of the RFC is supported by substantial evidence.  *See Phillips,* 357 F.3d at 1232 (quoting 20 C.F.R. § 404.1520 (e) (the ALJ will "assess and make a finding about the [claimant's] residual functional capacity based on all the relevant medical and other evidence")).

   **III.  The ALJ did not fail to make a proper credibility finding.**

Plaintiff argues that the ALJ failed to make a proper credibility finding of Plaintiff's testimony about her pain.  The Social Security Regulations provide that a claimant's subjective complaints of pain, alone, cannot establish disability.  Rather the Regulations describe additional objective evidence that is necessary to permit a finding of disability.  *See* 42 U.S.C.§ 423(d)(5)(A); 20 C.F.R. § 404.1529.  Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms.  This standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain.  *Foote v. Chater,* 67 F. 3d1553, 1560 (11th Cir. 1995); *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991).

The ALJ retains discretion not to credit the claimant's testimony of pain and other symptoms.  *See Holt,* 921 F. 2d at 1223.  When the ALJ decides not to fully credit the claimant's testimony, the ALJ must articulate the reasons for that decision.  *Id.*  In other words, even where the medical record includes objective evidence of pain, and where the ALJ acknowledges that the claimant experiences some pain, the ALJ may conclude that the degree of pain is not disabling in light of all the evidence.  *See Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987).  Indeed, it is not inconsistent for the ALJ to find a claimant suffers pain, and yet is not so severely impaired as to meet the stringent test for disability imposed by the Act.  *See Arnold v. Heckler,* 732 F. 2d 881, 884 (11th Cir. 1984).

In his decision, the ALJ concluded "[a]fter careful consideration of the evidence" that although Plaintiff's impairments could cause the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (Tr. 30).  Prior to this statement, the ALJ carefully summarized Plaintiff's testimony about her symptoms and associated pain and the disruption to her daily life.  (Tr. 29-30).  The Court has independently reviewed Plaintiff's testimony (Tr. 45-57) and concludes that the ALJ correctly summarized it in his opinion and that the ALJ's refusal to discount Plaintiff's testimony of disabling pain is supported by Plaintiff's own testimony and the medical evidence in this case.  Accordingly, the Court concludes that substantial evidence supports the decision of the ALJ.  *Miles,* 84 F.3d at 1400.

## VII.  CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**  A separate judgment is entered herewith.

DONE this 27th day of May, 2015.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE